UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI FERGUSON, ) | No. CV 04-8614-PJW |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

I.

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Alternatively, she asks the Court to remand the case to the Agency for further proceedings. For the reasons discussed below, the decision of the Agency is AFFIRMED, and this action is DISMISSED WITH PREJUDICE.

## II.

## BACKGROUND

Plaintiff was born on September 22, 1955, and was 48 years-old at the time of the administrative hearing. (AR 45, 376.) She has a high school education. (AR 69.) Her prior work experience includes a job as a cashier and cook in a coffee shop. (AR 64.)

Plaintiff filed protectively for DIB and SSI on January 31, 2003, alleging disability since July 20, 1988.[1] (AR 45-47.) The cause of Plaintiff's alleged disability was low back pain, high blood pressure and high cholesterol, low potassium, thyroid problems, headaches, water-retention, and swollen feet. (*See* AR 28.) Plaintiff's claim was denied initially and on reconsideration. (AR 23-31.)

Following the denial of her claim, Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). (AR 34.) A hearing was held on May 10, 2004. (AR 372-404.) Plaintiff appeared with counsel. (AR 374.) Plaintiff testified, (*see* AR 376-98), as did Gail L. Maron, a vocational expert. (AR 398-402.)

Plaintiff testified that she was recently divorced, and that she rented a room in a house with an adult couple and their son. (*See* AR 377.) She stated that she spent most of her time watching television alone in her room, and added that she sometimes visited her father in another city. (AR 393.) Plaintiff admitted that she did her own grocery shopping, cooked, cleaned her room, and drove herself wherever

---

[1] The ALJ noted that Plaintiff had filed two previous applications for SSI and/or DIB. After noting that the Agency had denied those claims on June 22, 1998 and October 24, 2000, respectively, the ALJ expressly declined to re-open those decisions. (*See* AR 13-14.)

she needed to go, although she stated that, when her back pain was severe, she sometimes needed help putting on and tying her shoes. (AR 390-91, 394.)

Regarding her work history, Plaintiff initially stated that she last worked in 1988 as a cook and cashier in a bowling alley with an adjoining coffee shop, until she injured her back. (*See* AR 378.) She explained that she suffered her back injury on-the-job, when she slipped and fell while retrieving food from a walk-in freezer. (AR 386.) She admitted, however, that she had earned $4,000 in 1999 by providing in-home care to an elderly woman. (*See* AR 378-79.) She added that she had received Workman's Compensation benefits for her back injury for approximately five years; when those benefits ran out, she went on General Relief and began applying for SSI. (AR 385, 387.)

Finally, Plaintiff discussed her impairments. As to her back injury, Plaintiff explained that she had undergone two back surgeries in 1990 or 1991, but had no other surgeries since then; by the time of the hearing, Plaintiff testified that her only treatment for back pain consisted of monthly visits with her doctor, who had prescribed "painkillers" and a back brace that she wore "most of the time." (AR 388, 395, 397.) Additionally, Plaintiff told the ALJ that she suffers from asthma, requiring her to use an inhaler approximately once every other day. (AR 394.) She admitted, however, that--although her doctors had advised her to quit smoking--she continued to smoke as much as a half-pack of cigarettes daily, having tapered off from a full pack-per-day just the year before. (*See* AR 382, 394.) Plaintiff testified that she was 5'5" tall and approximately 236 pounds, and stated that she had been "trying" to lose weight by dieting. (AR 382.) She conceded however, that--despite her doctors' recommendation

3

1  that she exercise--for at least the past year she had been unable to
2  walk more than approximately a half block because her "feet go to
3  sleep," although she denied using a cane.   (*See* AR 382-83.)
4  Plaintiff estimated that she could not lift even 10 pounds because her
5  hands would fall asleep.  (AR 384.)   She added that she could not
6  stand for longer than 20 minutes before her back "starts really
7  hurting me," and that she could only sit for 30-45 minutes at a time.
8  (AR 383-84.)

9     The ALJ next took the testimony of Gail L. Maron, the vocational
10 expert.  (*See* AR 396-403.)   After asking the expert to classify
11 Plaintiff's prior employment as an in-home caregiver, the ALJ posed
12 the first of two hypothetical questions:

> [Assume] a hypothetical person of [Plaintiff's] age,
> education, and work history [who] could do light level
> exertional work.  [. . . .]  No push or pull with the lower
> extremities.  Occasional postural limitations.  No work at
> heights or [. . .] around concentrated dust, fumes, gases.
> And avoid excessive cold and heat.

(AR 398.)  Ms. Maron testified that this person could not perform
Plaintiff's prior work as a home-attendant, but that she could perform
the light jobs of paper-sorter, storage facility rental clerk, and
bakery worker, all of which existed in significant numbers in the
local and national economies.  (*See* AR 398-400.)

The ALJ then posed his second hypothetical question to the
vocational expert:

> [Assume the second hypothetical person] could lift and carry
> 10 [*sic*] pounds on occasion and 10 pounds frequently.  Could
> stand and walk for two hours.  Occasional bend and stoop.

4

> And no exposure to dust, chemicals, fumes. No extreme
> temperatures. No work at heights. [. . . .] Sitting would
> be six hours.

(AR 400.) The expert testified that this second hypothetical person could perform work as a lampshade assembler, table-worker, and foundation-maker, sedentary jobs existing in significant numbers in the local economy. (*See* AR 400-01.) The expert added, however, that all employment would be precluded if this hypothetical person were unable to do more than four hours of sedentary work per day, or if she could not sit for longer than 30 minutes or stand and walk for more than 45 minute intervals. (*See* AR 401-02.) The ALJ then adjourned the hearing. (*See* AR 402-03.)

On July 12, 2004, the ALJ issued his decision analyzing Plaintiff's claims under the Agency's five-step sequential evaluation process.[2] (AR 13-20.) At step one, the ALJ noted that the evidence established Plaintiff had not performed any gainful activity since July 20, 1988, the alleged onset date. (*See* AR 14.) Accordingly, the ALJ proceeded to step two.

At step two, the ALJ found that Plaintiff's hypertension, asthma, degenerative disease of the lumbosacral spine, and mild cardiomegaly were all "severe" impairments. (*See* AR 14.) At step three, however, the ALJ determined that Plaintiff's claimed impairments did not meet or medically equal a Listing. (*See* AR 14.)

---

[2] As a preliminary matter, the ALJ noted that Plaintiff had filed a previous application for DIB and SSI which had been denied on June 22, 1998. (AR 13.) Although the ALJ explained that a copy of that previous adverse decision "has not been located" and that "it cannot be applied to the present decision," he declined to re-open the previous decision. (*See* AR 13-14.)

5

After summarizing the medical evidence--which dated only from 1997, (*see* AR 14-18)--the ALJ then assessed Plaintiff's residual functional capacity:

> [Plaintiff] retains the residual functional capacity to perform sedentary work.  She is able to lift and/or carry 10 [*sic*] pounds occasionally and 10 pounds frequently, stand and/or walk for two hours and sit for about six hours in an eight-hour day, with occasional bending and stooping.  She is unable to push and/or pull with the lower extremities.  She should not work at heights, should have no exposure to concentrated dust, fumes, gases, or extreme temperatures.

(AR 18.)  Based on this assessment of Plaintiff's residual functional capacity, the ALJ made the step-four finding that Plaintiff could not perform her past work as a home-attendant.  (*See* AR 18.)  Relying on the vocational expert's testimony, however, the ALJ concluded that Plaintiff retained the functional capacity to perform a "full range of sedentary work," including the jobs of lampshade assembler, table-worker, and foundation-maker.  (AR 18-19.)  Because these jobs existed in substantial numbers in the local economy, the ALJ made the step-five determination that Plaintiff was not disabled.  (*See* AR 19-20.)

Plaintiff timely sought review of the ALJ's decision.  (AR 9.) The Appeals Council denied Plaintiff's request for review, however, and the decision of the ALJ became the final decision of the Agency. (*See* AR 5-8.)  Plaintiff then filed her Complaint in this Court; the parties filed a Joint Stipulation ("Joint Stip.") on July 20, 2005.

## III.

## STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence reasonably can support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

IV.

DISCUSSION

Plaintiff alleges that, by disregarding substantial evidence that her obesity was "severe," the ALJ erred in his step-three determination that her combined limitations did not meet or equal a Listing. (*See* Joint Stip. at 4-12, 16-18.) The Agency contends that, although the ALJ did not specifically mention Plaintiff's obesity in his step-three analysis, he did consider that limitation and relied on substantial evidence that she retained the residual functional capacity to work *despite* that impairment. (*See* Joint Stip. at 13-15.) For the reasons set forth below, the Court sides with the Agency here.

At step three, a claimant can prove he is disabled by showing that he "meets" a Listing--*i.e.*, that he has been diagnosed with a Listed impairment of sufficient severity or duration. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990); 20 C.F.R. § 404.1520. If a claimant's impairment does not meet the criteria specified in the listings, she is still disabled if the impairment equals a listed impairment. *See* 20 C.F.R. § 404.1520(d). If a claimant has more than one impairment, the Commissioner must determine "whether the combination of [the] impairments is medically equal to any listed impairment." *See* 20 C.F.R. § 404.1526(a). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995)(citations omitted). A finding of equivalence must be based on medical evidence only. *See* 20 C.F.R. § 404.1529(d)(3).

The mere existence of impairments is not, however, proof of a disability. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.

1993). Thus, an ALJ should not consider a claimant's "impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that impairment." *See* 20 C.F.R. § 404.1525(d); *see Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985); *see also Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). Alternatively, a claimant can attempt to show that the combined effects of his impairments "equal" a Listing. *See* 20 C.F.R. § 404.1520(d). The claimant bears the burden of proof at this step. *See Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). The case law makes clear that the ALJ is not required to "state why a claimant failed to satisfy every different section of the listing of impairments." *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

The Agency's policy on obesity is set forth in the Agency's Social Security Ruling[3] ("S.S.R.") entitled "Evaluation of Obesity." That S.S.R. provides, in pertinent part:

> Obesity may be a factor in both "meets" and "equals" determinations. Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there

---

[3] Social Security Rulings constitute the Agency's interpretations of the statute it administers and of its own regulations. *See Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir. 1996). Although Social Security Rulings do not have the force of law, *see Chavez*, 103 F.3d at 851, once published, they are binding upon ALJs and the Commissioner. *See Gatliff v. Comm'r of the Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999); *see also* 20 C.F.R. § 402.35(b).

1    is an impairment that, in combination with obesity, meets
2    the requirements of a listing.  For example, obesity may
3    increase the severity of coexisting or related impairments
4    to the extent that the combination of impairments meets the
5    requirements of a listing.  This is especially true of
6    musculoskeletal, respiratory, and cardiovascular
7    impairments.  It may also be true for other coexisting or
8    related impairments, including mental disorders.

*See* S.S.R. 02-01p.  As to the impact of obesity at step three of the analysis, however, the Agency has cautioned:

   [W]e will not make assumptions about the severity or
   functional effects of obesity combined with other
   impairments.  Obesity in combination with another impairment
   may or may not increase the severity or functional
   limitations of the other impairment.

*Id.*  Instead, as with any other impairment, the Agency evaluates obesity case-by-case and determines its effect "based on the information in the case record."  *Id.*

After reviewing the record, the Court concludes that the ALJ did not commit any material error by failing to mention Plaintiff's obesity at step-three of the sequential evaluation process because neither Plaintiff *nor her counsel* alleged that her weight limited her ability to work at any time during the proceedings.  Additionally, the Court finds that, because the decision was supported by substantial evidence, any error was harmless.

1  A.   <u>By Failing To Raise Obesity As A Basis For Disability During The</u>
2       <u>Administrative Proceeding, Plaintiff's Counsel Waived That Issue</u>
3       Plaintiff argues that the ALJ committed reversible error by
4  failing to consider the evidence of her obesity which--when combined
5  with her other impairments--she now claims meets or equals a Listing.
6  (*See* AR 4-12, 16-18.)  After reviewing the record, the Court concludes
7  that the ALJ did not commit material error at step three of the
8  analysis.
9       The United States Supreme Court has recognized that a party to an
10 agency proceeding must raise "at a time appropriate under [the
11 agency's] practice" all issues which it intends to contest on appeal.
12 *See United States v. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).
13 More recently, the Ninth Circuit has explained:
14      A reviewing court usurps the agency's function when it sets
15      aside the administrative determination upon a ground not
16      theretofore presented.  Thus in the absence of exceptional
17      circumstances, a reviewing court will refuse to consider
18      contentions not presented before the administrative
19      proceeding at the appropriate time.
20 *Duncanson-Harrelson Co. v. Director, OWCP*, 644 F.2d 827, 832 (9th Cir.
21 1981); *see also Avol v. Secretary of Health & Human Services*, 883 F.2d
22 659, 661 (9th Cir. 1998)(holding that an issue not raised in Agency
23 proceedings was waived when raised for the first time in district
24 court).  Although *Duncanson-Harrelson* and *Avol* address the
25 consequences of a party's failure to raise issues at the agency
26 appellate level, their underlying principle is sufficiently broad to
27 command the same result where, as here, a claimant fails to raise
28 issues at any stage of an agency proceeding.  In the context of DIB

11

and SSI claims, the appropriate time for a claimant to allege that a particular condition limits her ability to work is when she submits her Disability Report or, at the very latest, when she testifies at the hearing before the ALJ.  *See* 20 C.F.R. § 404.1512 (requiring the claimant to "*bring to our attention* everything that shows that you are [. . .] disabled")(emphasis added).

Relying on *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), however, Plaintiff argues that the ALJ was required to consider the impact of her obesity despite the fact that she never raised the issue at the hearing.  (*See* Joint Stip. at 6-9.)  The Court disagrees.  The court in *Celaya* held that the ALJ is required to consider evidence of obesity at step-three of the sequential process when an *unrepresented* claimant fails to raise it.  *See Celaya*, 332 F.3d at 1181-82. Critical to the court's finding in *Celaya* that the ALJ is required to consider such evidence was the following observation:

> The ALJ's exclusion of obesity from his [multiple impairment] analysis is error in that he was addressing an illiterate, unrepresented claimant who very likely never knew that she *could* assert obesity as a partial basis for her disability.

*Id.* at 1183 (emphasis in original).  This holding was merely a reflection of the Ninth Circuit's long-standing ruling that, when a claimant is unrepresented by counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *See Key*, 754 F.2d at 1551.

Plaintiff's situation is markedly different from that of the claimant in *Celaya*.  Unlike the claimant in *Celaya*, there is no evidence that Plaintiff, a high school graduate, is literate.  In her

response to the question, "What are the illnesses, injuries, or conditions that limit your ability to work?" she identified lower back pain and numbness, numbness of the hands and feet, high blood pressure, headaches, bad circulation, thyroid problems, high cholesterol, low potassium, and stress as the only impairments that limited her ability to work. (*See* AR 28, 63.)  The medications Plaintiff told the ALJ she was taking were consistent with those disorders, and suggested no other impairments. (*See* AR 68.)  More importantly, unlike the claimant in *Celaya*, Plaintiff was ably represented at the hearing by counsel who specializes in disability issues.  Clearly, her lawyer was fully aware that Plaintiff could assert obesity as a basis for disability. (*See* AR 32-34, 62.)  At no point did Plaintiff's counsel ever inform the ALJ that Plaintiff's obesity was an issue.

     In these circumstances, *Avol* and *Duncanson-Harrelson* apply. Accordingly, where a claimant "[i]s represented by counsel who knew that all relevant evidence should have been brought to the ALJ's attention," as is the case here, she "must *raise all issues* and evidence at the[] administrative hearing[] in order to preserve them on appeal." *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)(emphasis added).  As Plaintiff certainly would concede, (*see* Joint Stip. at 9), the three-judge Ninth Circuit panel which decided *Celaya* did not and could not overrule *Meanel* and other circuit authority which holds that an ALJ cannot be faulted for failing to consider an impairment that the claimant does not bring into issue. *See Meanel*, 172 F.3d at 1115; *see also Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)(finding remand unnecessary where, although

the claimant's "past medical history indicated that she had had some back problems, none of the disabilities [] claimed before the ALJ was a back problem").

More recent Ninth Circuit authority is in accord. Just last year, in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), the court found that an ALJ did *not* err in failing to address the evidence of a claimant's obesity after step two of the sequential process. *See Burch*, 400 F.3d at 681. In *Burch*, as here, the claimant's "entire obesity argument rest[ed] on" *Celaya*. *Id.* at 682. The *Burch* panel explained that *Celaya* was distinguishable, primarily because the claimant was represented by counsel at the hearing. *See Burch*, 400 F.3d at 682. As explained above, the same is true of Plaintiff.[4] (*See* AR 32-34.)

The Court is, of course, mindful that "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). But this consideration does not permit a claimant represented by counsel to wait until after the hearing to argue for the first time that an impairment she knew she suffered all along but never raised in the administrative proceeding limits her ability to work. Plaintiff's counsel offers no excuse for his failure to raise this issue at the administrative hearing. (*See*

---

[4] Although neither party has cited it, the Court is aware of a recent decision by another judge of this Court who found that an ALJ erred in not considering the evidence of a claimant's obesity at step-three of the sequential analysis, even though the claimant was represented by counsel at the hearing and did not raise the issue. *See Stack v. Barnhart*, 327 F. Supp. 2d 1175 (C.D. Cal. 2004). Inasmuch as *Stack* applied *Celaya* to a situation where the claimant was represented by counsel, *see id.* at 1178, it is not persuasive in light of *Burch*, decided by the Ninth Circuit the following year.

Joint Stip. at 4-12, 16-18.)  Reversing the ALJ's decision in these circumstances simply cannot be justified.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511-12 (9th Cir. 1987) (holding that a claimant represented by counsel could not obtain reversal of the ALJ's decision on the ground that the ALJ failed to consider a particular impairment, even where the record before the ALJ contained some evidence of it, where the impairment "was not significantly at issue at the hearing" and where the claimant offered no explanation for his failure to press the particular claim of impairment at or before the hearing).  Accordingly, the Court concludes that the ALJ's failure to mention the evidence of Plaintiff's obesity at step-three of the sequential evaluation process does not require reversal.

B.   <u>Because The ALJ's Decision Is Supported By Substantial Evidence, Any Error Was Harmless</u>

As noted above, the Agency's decision is reviewed for harmless error.  *See Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)); *see also Batson*, 359 F.3d at 1197.  After reviewing the ALJ's decision in light of the evidence, the Court concludes that his assessment of the nature and severity of Plaintiff's limitations was supported by substantial evidence.

At the outset, the Court rejects Plaintiff's contention that the ALJ "ignor[ed]" the evidence of her obesity.  (*See* Joint Stip. at 8.) Notwithstanding Plaintiff's failure to raise the issue, it is clear that the ALJ did not disregard the evidence.  Quite the contrary: At the hearing on Plaintiff's application, the ALJ actually developed the testimony about Plaintiff's obesity and attempted to ascertain its effects on her ability to work.  (*See* AR 382-83.)  In his decision,

15

the ALJ also noted the consulting physician's observation that Plaintiff was "an obese female in no acute distress," and recorded her height and weight. (*See* AR 16, 118.)  It is, however, equally clear that the ALJ did not explicitly factor this limitation into his step-three analysis. (*See* AR 15.)  In these circumstances, the Court must examine the record to determine whether the omission prejudiced Plaintiff.  *See Burch*, 400 F.3d at 682 (assuming without deciding that the ALJ's failure to mention a claimant's obesity at step-two was legal error, it only could have prejudiced her at steps three or five).  Because Plaintiff only argues that the ALJ erred at step three of his analysis, (*see* Joint Stip. at 4-12, 16-18), the decision must be affirmed if the ALJ's failure explicitly to factor in her obesity at step three was harmless.  *See Burch*, 400 F.3d at 683 (finding that the ALJ's failure to factor the claimant's obesity in at step three was harmless).

    In Plaintiff's case, the Court concludes that the ALJ's failure to consider her obesity at step three did not affect the outcome of the decision.  The ALJ noted that treating and examining physicians had confirmed that Plaintiff was obese. (*See* AR 16.)  The records that the ALJ cited confirm that doctors who examined and treated Plaintiff made these observations and noted her fluctuations in weight; significantly, these records also show that--beyond counseling Plaintiff on diet and urging her to exercise--the team of physicians and physician's assistants who monitored her condition prescribed no treatment. (*See* AR 121, 246; *see also* AR 158 (noting Plaintiff's obesity and indicating that the plan was to "control [weight] by diet/exercise"), 189 (prescribing 30 minutes of exercise per day); 238

(same); 276 (same); *see also* AR 266 (prescribing "↑ exercise").)[5]
Given the state of the record, Plaintiff's case is analogous to *Burch*, where the Ninth Circuit held:

> Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is obese, and recommended that she participate in a medically supervised weight loss program.

*See Burch*, 400 F.3d at 683. For those reasons, the court held that "the ALJ did not commit reversible error by failing to consider Burch's obesity in determining whether she met or equaled the requirements of a listed impairment." *Id.* The Court is persuaded by this reasoning, which arguably applies with even greater force where--as here--no doctor even recommended that Plaintiff take part in a "medically supervised weight loss program." *See id.*

Plaintiff argues, however, that *Burch* should not apply because--unlike the claimant in *Burch*, who did not "specify which [L]isting she believes she meets or equals," *see* 400 F.3d at 682-83--Plaintiff has identified three Listings that, in her view, she would have met or equaled had the ALJ considered her obesity at step three. (*See* Joint Stip. at 8-9.) The problem with Plaintiff's argument is that it

---

[5] The Court's independent review of the record confirms that Plaintiff's treating physician noted her obesity and counseled her repeatedly about "exercise" and "diet/nutrition," but prescribed no further treatment. (*See* AR 158-59, 167, 174, 180-81, 183, 188-89, 199, 208, 212, 223-29, 232, 237-38, 243, 252, 258-59, 261-67, 270, 275-76, 281, 285, 294, 298.)

confuses a showing *necessary* to establish prejudice with one *sufficient* to do so.  Although it is *necessary* that a claimant hoping to show harm from the ALJ's failure to consider her obesity cite Listings under which obesity could result in disability, *see Burch*, 400 F.3d at 682-83, doing so is not, by itself, *sufficient* to establish that the ALJ's oversight was prejudicial.  As the Ninth Circuit made clear in *Burch*, a claimant must not only advance a theory of how she met one or more Listings; she *also* must point to evidence that she actually met the Listings she identifies "based on the record."  *See id.* at 683 (citing S.S.R. 02-01p); *see also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(rejecting a claimant's contention that the ALJ's failure to consider the combined effect of his seizure disorder and mental retardation at step three was in error, where the claimant advanced no theory of how these impairments combined to equal a listing *and* did not "point[] to evidence that shows that his combined impairments equal a listed impairment"). Where, as here, a claimant theorizes that her obesity was disabling when combined with her other impairments, the Court will assess prejudice by examining the record to see whether her "obesity exacerbated her other impairments."  *Burch*, 400 F.3d at 682.

In Plaintiff's case, her identification of Listings under which her obesity theoretically *could* have been disabling at step three is unsupported by a citation to even one piece of evidence that any doctor felt that her obesity made any of her other impairments more severe.[6]  (*See* Joint Stip. at 4-12, 16-18.)  Instead, the functional

---

[6] On this point, too, *Stack* is distinguishable.  *See Stack*, 327 F.Supp.2d at 1179 (noting that the claimant "did present evidence that her treating physician had concluded that her arthritis worsened with

capacity assessment provided by Dr. Concepcion A. Enriquez, M.D., the Agency's examining physician, notes Plaintiff's obesity but found that she could perform sedentary work. (*See* AR 121.) The ALJ adopted these same limitations, which were more conservative than those advanced by medical professionals who treated Plaintiff.[7] (*See* AR 17-18.) When an ALJ's decision adopts the physical limitations suggested by doctors who examined an obese claimant, her obesity is understood to have been factored into the decision *implicitly*, and his failure to mention obesity explicitly is harmless. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)(finding that the ALJ's failure to explicitly consider the claimant's obvious obesity at step three was harmless error because her obesity "was factored indirectly into the ALJ's decision as part of the doctors' opinions" that he did address); *cf. Celaya*, 332 F.3d a 1182 (reversing where the ALJ did not determine the effect of an unrepresented claimant's obesity on her other impairments, "even implicitly").

Ultimately, the Court rejects Plaintiff's argument that the ALJ failed to consider evidence that her obesity made her other impairments worse. It bears emphasis that Plaintiff bore the burden of producing medical evidence about the impact of her obesity on her increased weight"). By way of contrast, although Plaintiff has "identified the relevant listings and impairments in which the Commissioner considers obesity to have great impact" *in the abstract*, (*see* Joint Stip. at 9), she points to no evidence that her obesity actually *did* impact her other impairments.

[7] Michael Eaton, P.A., the medical professional who saw Plaintiff most often at the East Valley Community Health Center, opined that she could--despite her obesity and other impairments--sit, stand, and walk long enough to perform *light* work. (*See* AR 16, 338; *see also* AR 375, 389.)

19

other impairments at step three. *See* 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove to us that you are . . . disabled . . . . This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments."). This requirement ensures that the ALJ will reach his step-three conclusions based on actual evidence in the record, not mere speculation. *See* S.S.R. 02-01p. Although it may or may not have been reasonable for the ALJ to infer that Plaintiff's obesity could exacerbate her cardiovascular, pulmonary, or orthopedic impairments, *see Celaya*, 332 F.3d at 1182, it was at least as reasonable for the ALJ to infer that Plaintiff's obesity did *not* make any of her other impairments more severe--particularly because no doctor ever so opined. Where, as here, "the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan*, 169 F.3d at 599.

V.

CONCLUSION

For the reasons set forth above, this Court finds that the Agency's findings are supported by substantial evidence and are free from material legal error. Therefore, the Court affirms the decision of the Agency and enters summary judgment in favor of the Agency and against Plaintiff.

IT IS SO ORDERED.

DATED:    March  13 , 2006.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　PATRICK J. WALSH
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\FERGUSON, V 8614\Memo Opinion.wpd